T.C. Memo. 2000-239

UNITED STATES TAX COURT

ANTHONY S. D'ACQUISTO, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1145-99.                     Filed August 4, 2000.

Edward X. Clinton, Jr., for petitioner.

David S. Weiner, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOLDBERG, Special Trial Judge:  Respondent determined a
deficiency in petitioner's Federal income tax for the taxable
year 1994 in the amount of $14,650.  Unless otherwise indicated,
section references are to the Internal Revenue Code in effect for
the year in issue.

The sole issue in this case is whether petitioner is an
independent contractor and can claim Schedule C business expense

deductions for the taxable year 1994. We find that petitioner is an employee and not an independent contractor and therefore cannot deduct his business expenses on Schedule C.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time the petition was filed, petitioner resided in Chicago, Illinois.

In 1994, petitioner, under the stage name Tony Russell, worked as a voice actor providing voice announcements and/or narration for commercials, corporate videos, radio and television promotionals, video games, talking toys, and television shows. Although petitioner provided services for television, cable, and video, petitioner did not appear on screen. Petitioner began his career as a voice actor by studying communications at the University of Wisconsin. Between the years 1977 and 1983, petitioner worked with NBC as both booth announcer on television and a "swing personality" on radio stations. After working with NBC, petitioner began providing services to various parties on a contractual basis.

During the year in issue, petitioner was a member of both the Screen Actors Guild and the American Federation of Television and Radio Artists (unions). The unions set minimum standards for performer fees based on a collective bargaining agreement and

settled jurisdictional disputes.  For example, only radio and television commercials were subject to the unions' fee schedule.

Health and disability insurance benefits were also provided through the unions and not by the companies that retained petitioner's services.  The unions continued coverage if petitioner met a certain annual income requirement under the union contract.  If petitioner failed to meet the income requirement in any given year, the unions would discontinue coverage.  Moreover, petitioner did not receive vacation time from the unions or companies that retained his services.

Petitioner also participated in pension plans offered by the unions.  At the time of trial, petitioner was fully vested in these pension plans; however, the record does not reflect whether petitioner was fully vested during the year in issue.

During 1994, petitioner hired three agencies to procure work assignments from interested companies: Don Buckwald in New York, Voices Unlimited in Chicago, and Cunningham, Escott & Dipene in Los Angeles.  These agents worked with "buyers", the producers of commercials, video games, toys, television, cable or radio shows, who engaged petitioner for his services.  An interested company would request demonstration tapes from an agent, review the tapes, hold auditions, make its decision, and then call the agent to negotiate the terms of the contract.

For radio and television commercials, petitioner's agents

negotiated the terms of the engagement based upon the unions' fee schedule.  Compensation for all other assignments was negotiated outside of the unions' fee schedule.  It is unclear from the record whether fees were negotiated based on an hourly rate or on a fixed amount per engagement.  Nevertheless, petitioner received a separate paycheck stub for each job completed and in most cases a Form W-2, Wage and Tax Statement, for services rendered.[1]

In addition to work assignments procured by his agents, petitioner solicited additional work by mailing promotional compact disks containing samples of his commercials and announcements directly to producers of various entertainment companies.  With regard to all types of engagements, petitioner made the final determination whether to accept or to reject the work.  Most of petitioner's assignments were completed at studio facilities arranged by the company at a time mutually convenient for both parties.  Any tools or other materials necessary for the assignment were provided by both petitioner and the hiring company.  Petitioner testified that he did not work "full time" for a particular company during the year in issue.

Petitioner reported Schedule C gross income in the amount of $189,173 on his 1994 Federal income tax return.  It comprises

---

[1] For 1994, 94.93 percent of petitioner's Schedule C income was reported on Forms W-2 and the remaining 5.07 percent of petitioner's Schedule C income was reported on Forms 1099.

income reported on Forms W-2 in the amount of $179,578 and other "talent fees" in the amount of $9,595.  Although petitioner testified that he performed jobs for "hundreds of different agencies", he received and filed with his 1994 return only 10 Forms W-2 issued from the agencies and in some cases directly from the hiring companies.  Petitioner claimed 1994 Schedule C business expense deductions in the amount of $65,510.[2]  On Schedule SE, Self-Employment Tax, petitioner computed his self-employment tax liability as follows:

| | |
|---|---|
| Gross profit from Schedule C | $189,173 |
| (Less expenses) | (65,510) |
| Net profit from Schedule C | 123,663 |
| (Less "Statutory Wages")[3] | (117,391) |
| Reported net profit on Schedule SE | $6,272 |

In a notice of deficiency respondent determined that petitioner was not a qualified performing artist within the meaning of section 62(b)(1).  Respondent determined that petitioner was an employee, and recharacterized 94.93 percent of petitioner's Schedule C business expenses, or $62,187, as job-related Schedule A miscellaneous itemized deductions, subject to the 2-percent limitation under section 67.  Based upon the adjustments to Schedule A, respondent determined petitioner's

---

[2] The substantiation of petitioner's business expense deductions is not at issue in this case.

[3] Petitioner arrived at "Statutory Wages", or $117,391, by applying the fraction from Forms W-2 income in the amount of $179,578 over the total income reported on Schedule C in the amount of $189,578, which equals 94.93 percent.

alternative minimum tax liability in the amount of $11,906. Respondent determined petitioner's total deficiency in the amount of $14,650.

## OPINION

Respondent contends that petitioner is an employee of the companies he provided services to, that these companies treated him as an employee by issuing Forms W-2 to petitioner for his services, and that petitioner failed to pay self-employment tax on his total income from self-employment. Respondent further contends that petitioner did not have the requisite control over his activities to be considered an independent contractor.

Petitioner concedes that he is not a qualified performing artist within the meaning of section 62(b)(1). Petitioner contends that he is an independent contractor entitled to Schedule C business expense deductions even though most of his 1994 income was reported as employee wages on Forms W-2.

To determine whether a taxpayer is an independent contractor or an employee, common-law rules apply. See Weber v. Commissioner, 103 T.C. 378, 387 (1994), affd. per curiam 60 F.3d 1104 (4th Cir. 1995). Courts consider various factors to determine whether an employment relationship exists between the parties, including: (1) The degree of control exercised by the principal; (2) which party invests in work facilities used by the individual; (3) the opportunity of the individual for profit or

loss; (4) whether the principal can discharge the individual; (5) whether the work is part of the principal's regular business; (6) the permanency of the relationship; and (7) the relationship the parties believed they were creating. See id. All the facts and circumstances of each case should be considered. See id.

The right of control is ordinarily the crucial factor in determining whether an employer-employee relationship exists. See Matthews v. Commissioner, 92 T.C. 351, 361 (1989), affd. 907 F.2d 1173 (D.C. Cir. 1990). To retain the requisite control over the details of an individual's work, the principal need not stand over the individual and direct every move made by the individual. See Weber v. Commissioner, supra at 388.

Petitioner failed to establish that he had sufficient control over the relationship at the time service was rendered to be classified as an independent contractor. According to petitioner's own testimony, upon acceptance of a job, the hiring company provided a script and instructed petitioner to read it according to the company's specifications. If the company preferred a change in how the script was read, petitioner would be required to make the requested adjustments.

Petitioner argues that having the right to pick and choose the jobs of his choice demonstrates he had control over his services. However, petitioner failed to establish the details of control he had over the engagement agreement once petitioner

accepted a job. For instance, petitioner's services were negotiated through agents and memorialized in written agreements or contracts. At trial petitioner referred to a number of agreements he entered into with the various companies he worked for during the year in issue but failed to introduce them into evidence. Without the contracts in the record for our review, we cannot assume that petitioner had the requisite control over his services.

Furthermore, the record reflects that petitioner willingly accepted Forms W-2 for services. Although he may not have considered himself an employee of the companies for which he provided services, it is clear that the companies considered him an employee during the engagement because they issued Forms W-2 and withheld FICA, FUTA, and State employment taxes. The record also reflects that three different companies checked the "pension plan" box on petitioner's Forms W-2, although petitioner testified he had no independent knowledge of participation in any pension plan other than the unions. Petitioner admits that he failed to correct the companies' alleged "error" in treating him as an employee by issuing him Forms W-2 for his services.

Finally, petitioner's argument that working for a number of companies demonstrates a lack of continuity in the employer-employee relationship is without merit. In Kelly v. Commissioner, T.C. Memo. 1999-140, this Court found that working

for a number of employers during a tax year does not necessitate treatment as an independent contractor.

The case before us is a factual one.  Petitioner's failure to have corrected Forms W-2 issued to him and failure to pay self-employment tax under petitioner's own theory militates against his case before us.  Moreover, without the contracts before us, we cannot find that their provisions corroborate petitioner's claim that he was an independent contractor.  In sum, petitioner did not demonstrate that he is entitled to treatment as an independent contractor.  Consequently, we find that petitioner was an employee for the 1994 taxable year and is therefore not entitled to claim business expense deductions on Schedule C for the year in issue.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.